**In the United States District Court**
**Northern District of Mississippi**

**Richard and Shawnda Blaine,**
Plaintiffs,

v.                                                    Cause No. **3:26-cv-009-SA-RP**

**American Strategic Insurance Corp;**
**Alexander Mayeux; EFI Global, Inc.;**
**Blakeslee Partridge; and**
John and Jane Does 1-10;
Defendants.

---

**Response in Opposition to *Defendants, EFI Global and Blake Partridge's Renewed Motion to Dismiss Plaintiffs' First Amended Complaint* [Doc. 27]**

---

      **COME NOW,** Richard and Shawnda Blaine (hereafter collectively the "Blaines"), by and through counsel, Josh Daniel of JOSH DANIE LAW, PLLC, and files this their *Response in Opposition to Defendants, EFI Global and Blake Partridge's Renewed Motion to Dismiss Plaintiffs' First Amended Complaint* [Doc. 28], and would respectfully state and show as follows:

### 1. <u>Introduction</u>

      This case is not about a mere disagreement with an expert opinion. It is about a reinspection intentionally undertaken to reach a predetermined result and a resulting report crafted to support underpayment of a covered tornado loss.

---

Defendants EFI Global, Inc. ("EFI") and Blake Partridge ("Partridge") ask the Court to dismiss the Blaines' claims by resolving disputed facts, crediting their version of events, and expanding Mississippi law beyond its actual limits. Rule 12(b)(6) jurisprudence does not permit such an approach.

At the pleading stage, the Blaines need only allege plausible claims—not prove them. They have done so by alleging that EFI and Partridge knowingly ignored obvious damage indicators, conducted a biased reinspection at the insurer's direction, and issued a report intended to be relied upon to minimize coverage. These allegations support claims for bad faith adjusting, misrepresentation, gross negligence, respondeat superior, and civil conspiracy. They also establish a reasonable basis for recovery against Partridge, individually, defeating Defendants' fraudulent joinder argument and preserving remand.

The motion to dismiss should be denied.

## 2. **Standard**

In considering a Rule 12(b)6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See Forest Tire & Auto, LLC v. Catlin Specialty Ins. Co.*, No. NO.: 3:20-CV-72-DPJ-FKB, 2020 U.S. Dist. LEXIS 155519, *5 (S.D. Miss. Aug. 27, 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Further, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. DART*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)).

*Response in Opposition to Defendants, EFI Global
and Blake Partridge's Renewed Motion to Dismiss
Plaintiffs' First Amended Complaint [Doc. 27]*                    Page 2 of 25

"A satisfactory complaint will 'contain a short and plain statement of the claim showing that the pleader is entitled to relief.'" *See Williams v. Vicksburg Healthcare, LLC*, No. 3:22-CV-360-CWR-LGI, 2022 U.S. Dist. LEXIS 209360, *2-3 (S.D. Miss. Nov. 18, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The complaint requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but it need not have "detailed factual allegations." *See Liberty Mut. Ins. Co. v. Travelers Cas. & Sur. Co. of Am.*, No. 3:14-CV-696-CWR-FKB, 2015 U.S. Dist. LEXIS 50179, *2 (S.D. Miss. Apr. 16, 2015) (quoting *Iqbal*, 556 U.S. at 678). In other words, the allegations must be plausible on their face, meaning there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Jones v. Sanders*, No. 3:21-CV-30-CWR-FKB, 2022 U.S. Dist. LEXIS 32101, *1 (S.D. Miss. Jan. 26, 2022) (quoting *Iqbal*, 556 U.S. at 678)).

### 3. <u>Facts relevant to EFI and Partridge</u>

On April 3, 2025, an EF3 tornado struck the Blaines' home in Senatobia, Mississippi. *See* Doc. 16 [First Amended Complaint], ¶¶ 9, 18. The storm caused catastrophic damage to the structure, including destruction of the roof, shattered windows, structural shifting, and extensive wind-driven rain intrusion throughout the interior of the home. *Id.* at ¶ 9. The tornado also felled more than thirty trees on the property and collapsed the detached garage onto the Blaines' vehicle. *Id.* In the immediate aftermath of the storm, rain poured through the damaged roof and windows, leaving the home exposed to the elements and causing additional interior damage. *Id.*

The Blaines promptly reported the loss to their insurer, American Strategic Insurance Company ("ASIC"), the following day. *Id.* at ¶21. Despite the severity of the damage, ASIC

failed to promptly investigate or meaningfully respond to the claim. *See generally* Doc. 16 [First Amended Complaint]. Weeks passed before any substantive evaluation occurred, during which time the home continued to deteriorate due to ongoing exposure to rain and moisture despite the Blaines' best efforts at mitigation. *Id.* at ¶¶ 21-31.

As the dispute regarding the scope and value of the damage intensified, ASIC requested that an engineering inspection be performed. *Id.* at ¶¶ 47. To that end, ASIC retained EFI, an engineering firm frequently used by insurers in property-damage investigations. *Id.* at 57. EFI employee, Gerry Patrikios ("Patrikios"), was first assigned to inspect the property. *Id.* at 52.

### 3.a. <u>The initial EFI inspection</u>

Patrikios inspected the Blaine residence on July 2, 2025. *Id.* at 53. During that inspection, he observed and pointed out significant storm-related damage, including structural movement and widespread evidence of interior water intrusion. *Id.* Patrikios indicated to those present that he would document these observations in a written engineering report to be submitted to ASIC. *Id.*

Patrikios subsequently prepared a report dated July 7, 2025. *Id.* at 61. That report documented extensive evidence of interior moisture damage, including cracks and separations in interior finishes, moisture staining in ceilings and walls, mildew odor, and fungal growth on exposed wood components. *Id.* The report further noted that the home's damaged exterior openings were not weather-tight, allowing rainwater to infiltrate the interior following the tornado. *Id.* For example, the Patrikios report notes as follows:

- Multiple cracks and separations were noted in the interior wall and ceiling finishes; primarily in the master bedroom/bathroom and the west building addition. The cracks were not weathered, did not have paint within the cracks, and were of recent origin. Moisture staining was observed on the ceiling and wall surfaces in the master bathroom and west building addition. A pungent mildew odor was evident in the building interior and light fungal growth was observed on the exposed wood trim at the vaulted ceiling area in the den. The plywood sheathing covering the broken exterior windows was not weather tight (Photos 18 – 28).

*Id.* These findings were significant because interior water damage had become a central point of contention in the claim. *Id.* From the outset of the claim, ASIC attempted to minimize or deny interior water damage in order to limit the scope of covered repairs. *See generally* Doc. 16 [First Amended Complaint].

### 3.b. <u>Concealment of the Patrikios Report</u>

After the inspection, the Blaines' public adjuster repeatedly requested a copy of the engineering report. *Id.* at 54. ASIC's adjuster, Defendant Alexander Mayeux ("Mayeux"), repeatedly denied that any report existed and claimed he had not received one from EFI. *Id.* Despite these representations, ASIC in fact possessed Patrikios's report and was aware of its findings. *Id.* at ¶¶ 54-55. The report's conclusions were inconsistent with ASIC's coverage position regarding the extent of the damage and the amount owed under the policy. *Id.* at 61. Rather than provide the report to the Blaines, ASIC chose to obtain a second engineering opinion. *Id.* at ¶¶ 56-57.

### 3.c. <u>Retention of Blakeslee Partridge</u>

ASIC then retained Partridge, another engineer affiliated with EFI, to conduct a second inspection of the property. *Id.* Partridge has an extensive history of performing engineering work for insurance companies and was retained specifically because he had developed a reputation for identifying bases to limit or deny coverage on behalf of insurers. *Id.* at ¶¶ 57-58.

*Response in Opposition to Defendants, EFI Global and Blake Partridge's Renewed Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 27]*

Page 5 of 25

Partridge conducted a second inspection of the property on July 29, 2025. *Id.* at 59. During that inspection, both Partridge and an insurance-retained consultant referenced and discussed the findings of Patrikios's earlier report in the presence of the Blaines' public adjuster. *Id.* These statements made clear that ASIC had already received and reviewed the original engineering report despite previously indicating that no such report existed. *Id.*

### 3.d. Partridge's engineering inspection

Partridge's inspection was fundamentally inadequate. *Id.* at 60. Partridge failed to meaningfully investigate structural movement and interior water damage that had previously been identified by the contractor, public adjuster, and the original EFI engineer. *Id.* Instead, Partridge minimized or disregarded those conditions and produced a report that significantly downplayed the extent of the damage. *Id.* at ¶¶ 60-63.

The following is a pertinent passage from Partridge's report:

> No ceilings in the house are punctured or fractured. The drywall is not deteriorated, and the texture is not delaminated at any of the ceiling stains throughout the house, indicating the ceilings do not need to be removed. The drywall cracks extending from multiple windows and doors are not offset across the edges, and the walls are plumb, indicating the cracks do not represent structural damage to the framing. Most of these cracks have sharp edges and contain bright-colored drywall, indicating the cracks are recent. However, interior cracks are not exposed to the elements and do not meet weather, rendering it difficult to date such cracks. While the cracks are

---

[3] ACME Brick, *TSD 162 – Face Cracks on Brick*, https://brick.com/resources/view-sourcebooks/technical-services-digests/.
[4] General Shale Brick, *Tech Bulletin – Hairline Cracks*, https://generalshale.com/wp-content/uploads/2022/03/Tech_Bulletin_Hairline-Cracks_March-2022_GSB.pdf.

Insured: Shawnda Blaine
EFI Global File #: 051.01034
Claim #: 1492799-252551                     8 / 10                                    7



> consistent with vibrational forces from wind and windborne debris impacts during the tornado event, they are also consistent with foundation settlement and seasonal hygrometric expansion. The drywall cracks can be patched and painted.

*Id.* at 63. Partridge's report concluded, among other things, that:

- drywall cracks could simply be patched and painted;

- the cracks were consistent with foundation settlement or seasonal expansion; and

- the observed interior conditions did not require extensive structural repair.

*Id.* These conclusions directly contradicted the observations recorded in the earlier engineering inspection. *Id.* at 61.

Moreover, Partridge's report contained inaccurate or misleading information. In particular, some of the photographs attached to the report depicted structures that were not the Blaine residence at all. *Id.* at 64. Despite these alleged deficiencies, ASIC relied on Partridge's report in continuing to undervalue the claim and to dispute the extent of the storm damage. *Id.* at 66.

### 3.e. The Blaines' allegations against EFI and Partridge

The Blaines contend that EFI and Partridge were not acting as neutral engineering experts but instead participated in ASIC's broader effort to minimize the claim. As pled in the complaint, the EFI defendants:

- misrepresented the nature and extent of storm damage;

- ignored or failed to investigate evidence of interior water intrusion;

- produced engineering opinions that contradicted earlier findings; and

- assisted ASIC in reducing the amount payable under the policy.

*Id.* at ¶¶ 57-67, 122-132, 143-144. Based on the foregoing conduct, the complaint asserts claims against EFI and Partridge for negligent and intentional misrepresentation, bad faith adjusting,

*Response in Opposition to Defendants, EFI Global and Blake Partridge's Renewed Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 27]*

Page 7 of 25

gross negligence, and participation in a civil conspiracy with ASIC and its adjuster, Mayeux, to wrongfully underpay the claim.

4. **Argument**

    4.a. **Contrary to arguments put forth by EFI and Partridge, Mississippi law recognizes liability for adjusters and engineers**

EFI and Partridge make the bold assertion that "an insured (such as the Blaines) cannot recover against a third party (such as the Engineering Defendants) when a plaintiff has a viable claim against an insurance company (such as American)." Doc. 28, p. 2. Mississippi law does not support such a broad shield from liability.

In *Bass v. California Life Ins. Co.*, 581 So.2d 1087 (Miss. 1991), the Mississippi Supreme Court held that adjusters, insurance agents, and other similar entities are subject to a standard of care, which was first outlined in *Dunn v. State Farm Fire & Casualty Co.*, 711 F.Supp. 1359 (N.D. Miss. 1987). The *Dunn* court held that an adjuster could be deemed liable to an insured for gross and reckless negligence. The *Dunn* Court further went on to explain that:

> An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim. . . . He can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured.

*Id*. at pg. 1361 (internal citations omitted).

After *Bass*, the Mississippi Supreme Court again affirmed the validity of claims for bad faith adjusting in *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777 (Miss. 2004). In *Gallagher*, the Mississippi Supreme Court reiterated that, "[insurance adjusters, agents, and other similar entities] may be held independently liable for its work on a claim if and only if its acts amount to any one of the following familiar types of conduct: gross negligence, malice, or

reckless disregard for the rights of the insured. *Id.* at 27.

Additionally, in *Smith v. Rimkus Consulting Grp., Inc.*, No. CIVA 106CV515-LTSRHW, 2006 WL 2620636 (S.D. Miss. Sept. 12, 2006), Judge Senter observed that:

> The Smiths allege that their home and personal property was severely damaged by the winds of Hurricane Katrina on August 29, 2005. Plaintiffs allege that Ken Overstreet worked out and completed an engineering report dated December 20, 2005, that was favorable to their claim. An unsigned copy of his report is attached hereto as Exhibit "C." This report was emailed to Rimkus's Jackson, Mississippi office by Mr. Overstreet for signature by Corey Green, the licensed Mississippi engineer assigned to "sign off" on the report. Plaintiffs allege that Rimkus, acting by and through its agents and employees, particularly ... Bell and Heifner, altered Ken Overstreet's original report, and this alteration deleted any reference to wind as a cause of the "racking of the home," and inserted an altered conclusion that the structural damage and "racking" was caused by storm surge. Plaintiffs allege that Rimkus, acting by and through its agents and employees, altered this report and then forged Ken Overstreet's name to the altered report without Mr. Overstreet's approval or knowledge. The altered report dated January 20, 2006, is attached hereto as Exhibit "D." Plaintiffs allege that Rimkus, Bell ... and Heifner intentionally and maliciously altered Ken Overstreet's December 20, 2005, engineering report to falsely indicate storm surge was the cause of loss, when in fact Ken Overstreet found and opined that wind was the cause of loss and structural damage to your Plaintiffs' home.
>
> Plaintiffs allege that as a result of the Defendants' joint fraudulent conduct, they have been damaged in that CGI and Meritplan have refused to pay and indemnify them for their extensive and serious casualty losses as required under policy number MH0 1101664.

*Id.* at *1-*3. The Court then held that:

> The Plaintiffs' cause of action is not based merely on breach of contract. There is no question that they have alleged that movants committed, approved, or otherwise participated in a deliberate wrong related to the circumstances surrounding the preparation of, issuance of, and reliance on the report dated January 20, 2006.
>
> Under the amended complaint, the movants stand accused of corporate or personal misconduct associated with the adjustment of the Plaintiffs' claim that is cognizable under Mississippi law.

*Id.* at *4.

Moreover, in *Forest Tire & Auto, LLC v. Catlin Specialty Ins. Co.*, the district court reiterated the Fifth Circuit's holding that an independent engineer hired by an insurance company may be found liable to the insured "if his conduct amounts to gross negligence, malice, or reckless disregard for the [insured's] rights." *See Forest Tire*, Cause No. 3:20-cv-72-DPJ-FKB, 2020 U.S. Dist. LEXIS 155519 *11 (S.D. Miss. Aug. 27, 2020) (quoting *Aiken v. Rimkus Consulting Group, Inc.*, 333 F. App'x 806, 810 (5th Cir. 2009)). Similarly, in *Mooney v. Shelter Mut. Ins. Co.,* No. 2:17-CV-204-KS-MTP, 2018 U.S. Dist. LEXIS 230642 (S.D. Miss. Mar. 12, 2018), the court analyzed the conduct of an employee of an engineering firm and determined that the employee could be held liable for bad faith adjusting:

> This Court has previously held that an engineering consulting firm, like Rimkus, and its employees can be liable under this type of claim. Though there are uncertainties as to whether the role of the engineering consultant firm in that case is similar enough to the role Clark and Rimkus took in this instance, the Court finds that this is an uncertainty of law which must be resolved in favor of Plaintiff and remand.
>
> Plaintiff has certainly pleaded sufficient factual allegations to support a bad faith adjusting claim. She claims that Clark's engineering report included many deliberate inaccuracies, which she enumerates in her Complaint. This would fall below the standard of making a "realistic evaluation of the claim" and would constitute "gross negligence, malice, or reckless disregard" for Plaintiff's rights. The Court therefore finds that the Plaintiff has sufficiently pleaded this claim against Clark to survive a 12(b)(6) analysis under Mississippi law. Accordingly, Clark has not been fraudulently joined, and this Court does not have subject matter jurisdiction of this action under § 1332 as complete diversity does not exist. The Motion to Remand will therefore be granted, and this action will be remanded to the Circuit Court of Forrest County, Mississippi.

*Mooney*, 2018 U.S. Dist. LEXIS 230642 *4-5. *See also Smith v. Rimkus Consulting Group, Inc.*, Civ. Action No. 1:06-cv-515-LTS-RHW, 2006 WL 2620636, at *3 (S.D. Miss. Sept. 12, 2006) (finding claim was stated against defendant engineers based on

---

*Response in Opposition to Defendants, EFI Global
and Blake Partridge's Renewed Motion to Dismiss
Plaintiffs' First Amended Complaint [Doc. 27]*

Page 10 of 25

allegations that they "intentionally and maliciously altered Ken Overstreet's engineering report to falsely indicate storm surge was the cause of loss, when in fact Ken Overstreet found and opined that wind was the cause of loss and structural damage to your Plaintiffs' home" stated a claim against engineers).

In sum, Partridge and EFI can be held independently liable to the Blaines.

### 4.b. The Blaines have alleged sufficient facts against EFI and Partridge to state valid claims based on the out-come driven and factually false engineering report.

EFI and Partridge attempt to frame their involvement with the claim as merely providing an engineering opinion to ASIC. The First Amended Complaint alleges far more than that.

Mississippi courts have long recognized that professionals—including engineers and consultants—may be liable when they negligently or intentionally provide false information that foreseeably causes harm to others. *See* Section 4.a. supra (including *Forest Tire* and *Mooney*). The Blaines allege that the EFI defendants knowingly produced misleading engineering conclusions in order to assist ASIC in minimizing the claim. Specifically, the complaint alleges that:

- EFI's first engineer documented evidence of structural movement and widespread interior water intrusion following the tornado;

- ASIC concealed that report from the Blaines while denying that it existed;

- EFI and ASIC then retained a second engineer, Partridge, to conduct a reinspection designed to undermine the initial findings; and

- Partridge's report intentionally downplayed or ignored the previously observed storm-related damage and instead attributed the conditions to unrelated causes such as foundation settlement.

*See* Section 3 above and citations to First Amended Complaint. These allegations, taken as true—as they must be at the motion to dismiss stage—plausibly establish that the EFI defendants were not acting as neutral evaluators but were instead engaged in conduct designed to produce a predetermined outcome favorable to the insurer.

Mississippi law does not permit engineers to knowingly issue inaccurate or misleading reports in order to influence an insurance claim investigation. Where, as alleged here, an engineering report is prepared with reckless disregard for the truth or with the intent to assist an insurer in avoiding its contractual obligations, liability may attach for bad faith adjusting, including negligent / intentional misrepresentation and gross negligence. Accordingly, the complaint plausibly alleges actionable misconduct by EFI and Partridge, and dismissal at the pleading stage is inappropriate.

### 4.c. <u>The Blaines have alleged sufficient facts against EFI and Partridge to state valid claims based on the collusion between ASIC and the EFI defendants to intentionally minimize the claim.</u>

The First Amended Complaint also alleges that EFI and Partridge participated in a coordinated effort with ASIC and its adjuster, Mayeux, to minimize the Blaines' claim. Mississippi recognizes civil conspiracy where two or more parties combine to accomplish an unlawful purpose or a lawful purpose through unlawful means. *See Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) ("Under Mississippi law, a conspiracy is a

combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.") (internal quotations omitted).

Here, the First Amended Complaint alleges a sequence of events that plausibly supports such a claim. First, an EFI engineer (Patrikios) conducted an initial inspection and prepared a report documenting interior moisture damage and structural concerns caused by the tornado. *See* Section 3.a. supra. Second, rather than disclose that report to the Blaines, ASIC denied that any report existed despite having received and reviewed it. *See* Section 3.b. supra. Third, ASIC retained Partridge—another EFI engineer—to conduct a second inspection of the property. *See* Sections 3.c. and 3.d. supra. The complaint alleges that Partridge was retained specifically to dispute the earlier findings and to produce a report that would minimize the scope of storm damage including interior water damage. *See id.* Fourth, during the reinspection, ASIC representatives and Partridge referenced the earlier engineering findings, confirming that both ASIC and the EFI defendants possessed the report despite prior denials. *See id.* Finally, Partridge issued a report that contradicted the earlier engineering observations and downplayed the presence of interior water damage. *See id.*

Taken together, these allegations plausibly suggest that the EFI defendants did not merely provide independent professional services but instead acted in concert with ASIC to generate a report that would support ASIC's effort to underpay the claim. At the pleading stage, the Blaines are not required to prove the conspiracy. They must only allege facts that plausibly suggest a meeting of the minds or coordinated conduct. *See Jones v. Sanders*, No. 3:21-CV-30-CWR-FKB, 2022 U.S. Dist. LEXIS 32101, *1 (S.D. Miss. Jan. 26, 2022) (holding that allegations must be plausible on their face, meaning there is "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged") (quoting *Iqbal*, 556 U.S. at 678)).

The Blaines' complaint easily meets that standard.

**4.d. <u>The Blaines have alleged sufficient facts against EFI and Partridge to state valid claims based on the EFI defendants' biased and intentionally misleading investigation.</u>**

The EFI defendant's motion to dismiss ultimately invites the Court to do something Rule 12(b)(6) forbids: weigh competing factual interpretations of evidence. At the motion-to-dismiss stage, the Court's task is limited. The Court must determine whether the complaint contains sufficient factual allegations to state a plausible claim for relief, accepting the pleaded facts as true and drawing all reasonable inferences in the plaintiffs' favor. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The EFI defendant's arguments depend on the premise that Partridge's engineering conclusions were correct and that any disagreement with those conclusions amounts to nothing more than a professional difference of opinion. That argument, however, ignores the specific factual allegations contained in the complaint.

The Blaines do not merely allege that Partridge reached the wrong conclusion. Instead, the complaint alleges that:

- the initial engineering inspection done by Patrikios identified structural and interior water damage caused by the tornado;

- the subsequent report by Patrikios was concealed from the Blaines while ASIC denied its existence;

---

*Response in Opposition to Defendants, EFI Global and Blake Partridge's Renewed Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 27]*

Page 14 of 25

- a second inspection with Partridge was then arranged after ASIC had already received the first report;

- the second engineer, Partridge, intentionally and knowingly minimized or disregarded previously documented damage all while knowing it would be harmful to the Blaines' claim; and

- the resulting report by Partridge was used to justify undervaluing the claim.

*See* Section 3 supra and citations to the First Amended Complaint. These allegations go beyond a simple disagreement between experts. They describe a sequence of events from which a factfinder could reasonably infer that the second inspection and report were designed to produce findings favorable to ASIC.

Whether Partridge's conclusions were legitimate engineering opinions or part of an effort to minimize the claim is a factual issue that cannot be resolved on the pleadings. Such determinations require discovery, expert testimony, and credibility assessments that are reserved for later stages of the litigation. Because the complaint plausibly alleges misconduct by the EFI defendants, the motion to dismiss improperly asks the Court to resolve factual disputes and weigh competing interpretations of the evidence. Rule 12(b)(6) does not permit such an inquiry.

Accordingly, the motion to dismiss should be denied.

### 4.e. *Brown* and *Hill of Zion* do not compel dismissal.

The EFI defendants' reliance on *Brown v. State Farm Fire & Casualty Co.*, No. 06-cv-199, 2007 U.S. Dist. LEXIS 40816* (S.D. Miss. June 4, 2007), and an unpublished order from *Hill of Zion v. State Farm Casualty Co.*, No. 3:22-cv-00718 (S.D. Miss. Sept. 30, 2024) is misplaced. Those cases involved allegations of mere negligence or disagreement with an

engineering opinion, not plausible claims of outcome-driven reinspections undertaken with reckless disregard for the insured's rights. In *Brown*, the court emphasized the absence of allegations that the engineer acted with bias, intent to mislead, or reckless indifference. *See generally Brown*, 2007 U.S. Dist. LEXIS 40816 *9-*11. Moreover, the Court's order and opinion in *Brown* was issued at the summary judgment stage. *See id.* Likewise, *Hill of Zion* turned on conclusory pleadings that failed to allege coordinated or intentional misconduct. *See* Doc. 27-1

Here, the Blaines allege far more: that EFI and Partridge were retained for a targeted reinspection, ignored obvious damage indicators, and issued a report crafted to support underpayment. *See* Section 3 supra. These allegations materially distinguish this case and place it squarely within the category of claims allowed to proceed past dismissal. *See, e.g., Forest Tire* supra.

A more applicable opinion is the one entered in *Forest Tire*. In *Forest Tire*, the Court considered virtually identical issues to those involved in this case, i.e., (1) bad faith refusal to pay claim against the insurance company; (2) gross negligence/intentional filing of a false insurance report against the engineering firm and engineer; (3) civil conspiracy against all defendants; and (4) liability of the insurance company, adjuster and engineering firm under *respondeat superior*. *See Forest Tire*, 2020 U.S. Dist. LEXIS 155519, *5. In ruling on the plaintiff's complaint, the *Forest Tire* Court noted that:

- An adjuster "incur[s] independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured." *Forest Tire*, 2020 U.S. Dist. LEXIS 155519, *7.

---

- "The gross-negligence standard explained above applies to 'an insurance adjuster, agent or similar entity.'" *See id.* at *10 (quoting *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 784 (Miss. 2004)).

- An outside engineer hired to assess the damage on an insurance claim qualifies as a "similar entity" that may be held liable for work on an insurance damage claim if such work amounts to gross negligence, malice, or reckless disregard for the insured rights. *See id.* at *11.

Applying the above law to the facts alleged in the complaint, the *Forest Tire* Court found that:

> Proving such allegations may prove a tall order—especially as to Engle Martin—but at the Rule 12(b)(6) stage, the Court must view the allegations in the light most favorable to Plaintiff. And the plausibility standard is met when the complaint pleads enough fact to raise a reasonable expectation that discovery will reveal evidence in support of the alleged claims.

*See id.* at *8-*9. And, viewing those allegations in the light most favorable to the plaintiff, the *Forest Tire* Court concluded that, at the motion to dismiss stage, the plaintiff's claims of bad-faith refusal to pay, gross negligence, respondeat superior, and civil conspiracy against the defendants should not be dismissed even though the counts against the engineering defendant were "poorly developed at this time and may ultimately be subject to future motions." *Forest Tire*, 2020 U.S. Dist. LEXIS 155519 at *18.

As set forth below, the same facts alleged in *Forest Tire* that the Court found sufficient to meet the plausibility standards are present in this case to support the Blaines' claims of gross negligence, respondeat superior, and civil conspiracy:

| *Forest Tire* Complaint | Blaines' First Amended Complaint |
|---|---|
| Engle Martin hired Rimkus (engineering firm), "an industry player frequently used by insurers with a reputation for identifying bases upon which an insurer can deny coverage." Compl. (1-1), ¶¶ 8-9. | After requesting an engineer inspection, Defendant ASIC sent an engineer by the name of Gerry Patrikios to the Blaines' home to perform an inspection. Mr. Patrikios is a structural engineer with Defendant EFI. Doc. 16, ¶ 52.<br><br>Mr. Patrikios's inspection was conducted on July 2, 2025. During the inspection, Mr. Patrikios made several comments to those present about the severe damage to the home including his observations of structural shifting and interior water intrusion. Mr. Patrikios also stated that he would document his findings in writing and send them to Defendant ASIC. *Id.* at ¶ 52.<br><br>Beginning on July 8, 2025, the Blaines' public adjuster, Lauren Olmsted, repeatedly requested a copy of the engineering report prepared by Mr. Patrikios. In response, Defendant Mayeux claimed that he had not yet received the report and later insisted that "there was nothing to send." When pressed again on July 16 and 17, Defendant Mayeux continued to deny the report's existence, asserting "there is not a completed report," even as he admitted, "we went over their findings (verbally)." Defendant Mayeux made multiple excuses over the next several weeks as to why Mr. Patrikios's report could not be provided. Defendant Mayeux even explicitly stated that he did not have any such report, when in fact he did. *Id.* at ¶ 53.<br><br>Despite Defendant Mayeux's lies to the Blaines and Ms. Olmsted that Mr. Patrikios had not authored any report, Defendant Mayeux and Defendant ASIC in fact possessed such a report and were aware of Mr. Patrikios's findings and observations |

| | |
|---|---|
| | including observations of widespread water damage inside the Blaines' home. These Defendants not only continued to hide this information from the Blaines and their public adjuster, but they disregarded Mr. Patrikios's findings and observations and began to actively seek out an engineer to undermine the same. *Id.* at ¶ 54.

While lying about the existence of Mr. Patrikios's report, Defendant Mayeux told Ms. Olmsted and the Blaines that Defendant ASIC needed to send another engineer to the home for a reinspection. Although the Blaines were unaware at the time, Defendant ASIC was requesting a reinspection in order to have another engineer change the initial report authored by Mr. Patrikios in order to undermine Mr. Patrikios's findings. *Id.* at ¶ 55.

Defendant ASIC then retained Defendant Partridge (Blakesless Patridge, PE) of Defendant EFI. Defendant Partridge is a petroleum engineer who has made a living through insurance work for virtually his entire career, including formerly owning a ServPro franchise and then having stints at Donan Engineering and now Defendant EFI handling inspections and similar work solely for insurance companies. Defendant Partridge has a reputation for identifying bases to deny coverage on behalf of his insurance clients, which Defendant ASIC knew when it retained him on the Blaines' claim. Doc. 16, ¶ 57. |
| And he (the structural engineer) found a basis  for denying the claim that was "knowingly  false or formed with reckless indifference for the truth." Compl. (1-1), ¶¶13 -14. | During the July 29, 2025 inspection, Defendant Partridge intentionally and willfully failed to conduct an adequate inspection. This included intentionally glossing over, disregarding, and attempting to downplay signs of structural and interior water damage to the home that had previously |

| | |
|---|---|
| | been pointed out by the Blaines' contractor, public adjuster, and Mr. Patrikios. As opposed to a legitimate engineering inspection, Defendant Partridge's work was conducted with the sole intention of wrongfully assisting Defendant ASIC in undervaluing the claim. In other words, Defendant Partridge's inspection was a complete sham which failed to account for the other eye-witness accounts of damage including those made by the Blaines' contractor, public adjuster, and third-party Mr. Patrikios. Doc. 16, ⁋ 60.<br><br>Appended to Defendant Patridge's report was a collection of photographs allegedly of the Blaines' home, but when the Blaines reviewed said photographs they realized that several of the photographs depicted some other property that was not their home. *Id.* at ⁋ 64.<br><br>When Defendant Partridge submitted his report to Defendant ASIC, Defendant ASIC had actual knowledge and/or constructive knowledge that so-called facts in the report were false and/or incomplete. This included knowledge of the falsity of Defendant Partridge's so-called opinion that the interior damage could simply be "patched and painted" without further inspection and repair to the interior of the walls. In fact, Defendant Patridge intentionally refused to investigate or inspect the [interior walls where water damage had previously been identified by the Blaines' contractor, public adjuster, and engineer Patrikios].[1] *See id.* at ⁋ 65. |
| Significantly, Plaintiff listed the ways the report was incorrect, some of which—if | Paragraphs 61 and 63 of the First Amended Complaint contain actual passages from both |

---

[1] The Blaines' First Amended Complaint unintentionally omitted the second half of the last sentence to this paragraph. *See* Doc. 16, ⁋ 65.

*Response in Opposition to Defendants, EFI Global*
*and Blake Partridge's Renewed Motion to Dismiss*
*Plaintiffs' First Amended Complaint [Doc. 27]*

Page 20 of 25

| | |
|---|---|
| believed— could plausibly support a gross negligence claim. Compl. (1-1), ¶¶11 – 12. | the Patrikios report and Partridge report, while pointing out some of the specific incorrect passages in the Partridge report. *See* Doc. 16, ¶¶ 61, 63, and 64. |

A plaintiff has met the "plausibility" pleading standard when "the complaint pleads enough facts to raise a reasonable expectation that discovery will reveal evidence in support of the alleged claims." *See Forest Tire & Auto, LLC v. Catlin Specialty Insurance Co*., No. 3:20-CV-72-DPJ-FKB, 2020 U.S. Dist. LEXIS 155519, *9 (S.D. Miss. Aug. 27, 2020) (internal quotations omitted). Since virtually identical allegations to those asserted by the Blaines in this case, were found to satisfy the plausibility standard in *Forest Tire*, a contrary finding in this case does manifest injustice to the Blaines.

In *Shree Hari*, an emergency field adjuster was assigned to inspect damage at a hotel caused by a busted water pipe. *See Shree Hari, LLC v. Accelerant Speciality Ins. Co.*, No. 3:23-cv-597-KHJ-MTP, 2023 U.S. Dist. LEXIS 234877 * (S.D. Miss. Dec. 21, 2023). The complaint alleged that Chisholm, an adjuster, directed remediation contractors to remove and discard damaged items from the premises and that he represented that he had the authority to direct such work. *See Shree Hari*, 2023 U.S. Dist. LEXIS 234877, *1-*6. His alleged direction contradicted prior instructions from the insurance company to the plaintiffs, advising them not to throw away anything as it would need to be reviewed for insurance coverage. *See id.*

In support of their motion to remand, the plaintiffs clarified that "Chisholm's conduct was either intentionally fraudulent and misrepresentative or was grossly negligent or conducted in reckless disregard of the Plaintiffs' rights." *See id.* at *9. The plaintiff also "elaborate[d] how Chisholm's conduct harmed them: Items that were thrown away or torn out at Chisholm's

direction . . . occurred in rooms of the motel that ASIC and NARS have subsequently decided were not damaged as a result of the water event." *See id.* (internal quotations and alterations omitted). Considering these facts and circumstances, the Court, in *Shree*, concluded that "[e]vidence that Chisholm knew he did not have the authority to direct the remediation work … would support a claim that Chisholm acted with malice or in reckless disregard to Plaintiffs' rights." *Id.* at *10.

The Court emphasized, "[e]ven if Chisholm did not know on July 12 that his instructions exceeded his authority and that the work would not be covered, the allegations—and reasonable inferences from them—could still support a gross-negligence claim." *Id.* at *10. The Court went on to explain that "[g]ross negligence is defined by conduct that, under the circumstances, evidences a reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Id.* at *10 (internal quotations omitted). Drawing such reasonable inference, the Court went on to observe:

> Here, the Court can reasonably infer that Chisholm had discussed the ongoing claim at the Econolodge with someone at Engle Martin between July 12 and July 15. Indeed, Plaintiffs allege that Chisholm acknowledged on July 15 that Engle Martin had reassigned the claim to Schmelling. [1-1] 34. If Schmelling or others at Engle Martin informed Chisholm when he was replaced that he had acted outside his authority in mobilizing roll-off containers and ordering damaged items to be thrown away, then Chisholm's failure to relay that information could support a finding of "reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Cheshier*, 2021 U.S. Dist. LEXIS 151937, 2021 WL 3573621, at *4.
>
> That said, "[t]his court does not seek to predict how the litigation of the claims will play out in state court." *Id.* Instead, this Court examines the allegations, considers what "opportunity [Plaintiffs] ha[ve] had to develop [their] claims against [Chisholm]," and concludes that Plaintiffs have pleaded enough facts to raise a reasonable expectation that discovery will reveal relevant evidence in support of the alleged claims. *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004); *see also Forest Tire & Auto*, 2020 U.S. Dist. LEXIS 155519, 2020

WL 5079164, at *3 (citation omitted).

*Shree Hari*, 2023 U.S. Dist. LEXIS 234877, *10-*11.

Just like *Shree Hari*, the Blaines show evidence, as pointed out in the First Amended Complaint (Doc. 16), that Defendants EFI and Partridge acted with malice or in reckless disregard to the Blaines' rights. *See* Section 3 supra; Doc. 16 [First Amended Complaint]. Furthermore, the Blaines have pled facts showing that the wrongful actions of EFI and Partridge lead to the partial denial of the Blaines' claim with ASIC. As shown in the table above, the Blaines (like the Plaintiffs in *Shree Hari* and *Forest Tire*) elaborated on how the EFI defendants' conduct harmed them and has alleged sufficient facts to show that these defendants' conduct was grossly negligent or evidences "reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Shree Hari*, 2023 U.S. Dist. LEXIS 234877 at *11.

In *Haimur*, the plaintiffs sued Allstate for denying their claim for losses resulting from damages caused by a fire that occurred at their house. *See generally Haimur v. Allstate Prop. & Cas. Ins. Co.*, No. 3:20-cv-483-CWR-FKB, 2021 U.S. Dist. LEXIS 161544 * (S.D. Miss. Aug. 25, 2021). The Court found the following allegations of the plaintiffs' complaint alleged sufficient facts which plausibly state a claim of gross negligence, recklessness, and intentional conduct:

> In the present case, Plaintiffs contend that Allstate "committed actions and omissions in this matter that constituted gross negligence, recklessness, and intentional disregard for the Plaintiffs' rights and property." Docket No. 1 at 10. In support of their claim, Plaintiffs underscore Defendant's alleged "misrepresentations about Defendant's purported investigation, delay in adjusting the claim, and denial based on manufactured reasons." Docket No. 11 at 14. Such factual allegations, taken as true, demonstrate a reckless indifference to, or even an intent to prolong or exacerbate, Plaintiffs' suffering resultant from the fire and subsequent delay and denial of their insurance claim. This count will not be

dismissed.

*Haimur*, 2021 U.S. Dist. LEXIS 161544 at *12-*13.

Similar allegations exist here. In support of their claims, the Blaines listed how the Partridge report was incorrect. See Doc. 16, ¶¶ 52-67. (Complaint, Doc. 1-1, ¶¶34 -36). The Blaines' First Amended Complaint provides more specific facts in support of their cause of action against EFI and Partridge than that found in *Haimur* to demonstrate a "reckless indifference to, or even an intent to prolong or exacerbate" the Blaines' suffering.

**5.** <u>**Conclusion**</u>

*Smith*, *Mooney*, and *Forest Tire*, and the other cases cited herein supra, which directly deal with an engineer's gross negligence in evaluating a claim, clearly establish that the Blaines' cause of action is legally cognizable under Mississippi law. Based on the above and the other allegations contained in the First Amended Complaint [Doc. 16], the Blaines have provided more than enough facts and allegations to support their claims against EFI and Partridge and survive a Rule 12(b)(6) analysis. Here, one cannot reasonably say that the Blaines have "no reasonable basis" to predict that they "might establish liability" on their claims against the EFI defendants. Accordingly, the EFI defendants' renewed *Motion to Dismiss* [Doc. 27] should be denied and this matter remanded to the Circuit Court of Tate County, Mississippi.

**RESPECTFULLY SUBMITTED,** this the 4th day of March 2026.

By: <u>/s/ Josh Daniel</u>
JOSH DANIEL, MS Bar No. 104275
JOSH DANIEL LAW
398 E Main St, Ste 111
Tupelo, Mississippi 38804
Telephone: (662) 205-0701
Facsimile: (662) 500-0426

---

Email: josh@joshdaniellaw.com

*Attorney for Richard and Shawnda Blaine*

## Certificate of Service

I, Josh Daniel, attorney for Plaintiffs, do hereby certify that I have on this date served all counsel of record with the foregoing via U.S. Mail, electronic mail, facsimile, mec/ECF notice, or similar method.

**RESPECTFULLY SUBMITTED,** this the 4th day of March 2026.

By: /s/ Josh Daniel_____
      JOSH DANIEL