IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

RICHARD BLAINE and                                                      PLAINTIFFS
SHAWNDA BLAINE

V.                                                    CIVIL ACTION NO. 3:26-CV-9-SA-RP

AMERICAN STRATEGIC INSURANCE CORP.,
ALEXANDER MAYEUX, EFI GLOBAL, INC.,
BLAKESLEE PARTRIDGE, and JOHN DOES 1-10                                 DEFENDANTS

ORDER AND MEMORANDUM OPINION

Richard and Shawnda Blaine (collectively the "Blaines") initiated this civil action on November 6, 2025, in the Circuit Court of Tate County, Mississippi, pursuing claims against American Strategic Insurance Corp. ("ASIC"), Alexander Mayeux, EFI Global, Inc. ("EFI"), Blakeslee Partridge, and John Does 1-10. EFI removed the action to this Court on January 9, 2026, premising jurisdiction on diversity of citizenship.[1]

The Blaines subsequently filed their First Amended Complaint [16], which is now the operative complaint, on February 4, 2026. On the same date, the Blaines filed a Motion to Remand [17], arguing that there is not complete diversity of citizenship between the parties.[2] That Motion [17] has been fully briefed and is ripe for review. The Court is prepared to rule.

---

[1] ASIC consented to removal of the case. *See generally* [3]. Mayeux has not yet been served with process. *See* [39] at p. 1. As to Partridge, he is alleged to have been improperly joined in this lawsuit.

[2] The Court notes that EFI and Partridge previously filed a joint Motion to Dismiss [11] on January 23, 2026, which was rendered moot upon the Blaines filing their First Amended Complaint [16]. Thereafter, on February 18, 2026, EFI and Partridge filed their joint Renewed Motion to Dismiss [27].

*Relevant Factual and Procedural Background*[3]

This lawsuit arises from an insurance coverage dispute following an EF3 tornado that passed near the Blaines' home last year.

The Blaines, who are residents of Senatobia, Mississippi, allege that, on April 3, 2025, a "tornado passed within yards of their home… causing catastrophic damage to the home itself." [16] at p. 5. The alleged damages include a downed tree on top of the roof causing an opening, blown out windows, moved exterior brick walls, and a collapsed detached garage. At the time of the tornadic event, the Blaines' home was insured by ASIC pursuant to a homeowners insurance policy. According to the First Amended Complaint [16], the policy provided coverage "on a replacement cost valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation." *Id.* at p. 5.

On the same date, the Blaines submitted a claim for property damage to ASIC. On April 6, 2025, Michael Brown, an independent field adjuster, conducted an inspection of the Blaines' home on behalf of ASIC. During his inspection, Brown allegedly pointed out multiple areas within the home that had sustained water damage. As of the date of Brown's inspection, the Blaines were unaware of the name of their ASIC claims adjuster and had not been contacted pertaining to their property damage claim.[4]

On April 28, 2025, an ASIC representative, Crystal Newland, sent the Blaines an email containing an estimate of the Replacement Cost Value (RCV) with respect to the damages to their home. According to the Blaines, that estimate "reflected more than thirteen thousand dollars in

---

[3] This factual recitation is based on the allegations in the First Amended Complaint [16]. As explained in more detail hereinafter, relevant to the Blaines' Motion to Remand [17], the Court notes that the First Amended Complaint [16] does not join any additional parties nor does it assert any new claims against Partridge.

[4] The Blaines' were separately contacted by a desk adjuster with ASIC pertaining to claimed damages to their vehicles but not their home.

2

deletions made by adjuster Trevor Washam" and was one-third of the amount their contractor had estimated for repairs. *Id.* at p. 9. The Blaines allege that they continued to have communication issues with ASIC thereafter. Eventually, they rented a fifth-wheel camper to live in until such time as repairs could be made to their home. They also retained a public adjuster, Lauren Olmsted, to represent them on their home damage claim.

On May 29, 2025, Olmsted sent ASIC a letter of representation and request for information on behalf of the Blaines. The next day, Alexander Mayeux, a desk adjuster with ASIC, responded to Olmstead indicating that the claim had been reassigned to him. In mid-June 2025, Olmsted submitted a claim for Additional Living Expenses ("ALE") on behalf of the Blaines. Approximately two weeks later, Mayeaux denied that claim on the basis that the Blaines were not entitled to benefits under the policy's ALE coverage. In short, the Blaines contend that Mayeaux engaged in "contradictory and unreasonable conduct [that] was calculated to manufacture delay, create justification for withholding benefits, and shift blame onto the Blaines for Defendant ASIC's continuing failure to timely and fairly adjust the claim." *Id.* at p. 11.

After the dispute pertaining to the ALE claim, Olmsted provided Mayeux with her estimate for the damage to the home. Mayeaux then insisted that ASIC needed to have an engineer inspect the home and requested to take the Blaines' recorded statements. The Blaines cooperated with those requests.

On July 2, 2025, Gerry Patrikios, a structural engineer employed by EFI (who was in turn hired by ASIC), conducted an inspection of the Blaines' home. The Blaines allege that Patrikios made comments during his inspection about the damage to the home, "including his observations of structural shifting and interior water intrusion." *Id.* at p. 13. A week after Patrikios' inspection, Olmsted requested a copy of his report from ASIC but was told that no report existed. The Blaines

3

allege that Mayeux and ASIC did in fact possess an engineering report authored by Patrikios but that they were concealing the same with the goal of disregarding Patrikios' findings. The First Amended Complaint [14] alleges that Mayeux then told Olmsted and the Blaines that ASIC needed to have another engineer perform a "reinspection" of the home. *Id.* at p. 14. This second inspection was conducted by Blakeslee Partridge, an engineer also employed by EFI, on July 29, 2025. ASIC also retained an unnamed loss consultant during this time.

The Blaines contend that Partridge "has a reputation for identifying bases to deny coverage on behalf of his insurance clients, which Defendant ASIC knew when it retained him on the Blaines' claim." *Id.* They allege that he was retained by ASIC solely for the purpose of discrediting portions of Patrikios' report, who, again, was also employed by EFI. According to the Blaines, Partridge's report did not provide an account of specific interior water damages that were noted by the Blaines' contractor, Olmsted, and Patrikios. The Blaines contend that the alleged interior water damage to the home was a major point of contention between them and their insurer, ASIC, and that Partridge's report "glossed over any findings and observations" of that damage. *Id.* at p. 16. Additionally, they claim that Partridge's report included photographs of another property that was not their home.

Ultimately, the First Amended Complaint [16] alleges that ASIC relied on Patridge's report to undervalue the Blaines' home damage claim leading, in part, to the instant lawsuit being filed. The Blaines' claims against Partridge and EFI are based on Partridge's report. They bring the following claims against Partridge and EFI: (1) gross negligence, (2) negligent misrepresentation, (3) intentional misrepresentation, (4) bad faith adjusting, (5) negligent infliction of emotional distress, (6) intentional infliction of emotional distress, and (7) civil conspiracy. They also bring a

4

respondeat superior-based claim against EFI.[5] In their First Amended Complaint [16], the Blaines request "compensatory damages, special damages, emotional distress damages, incidental and consequential damages, plus attorney fees and costs, *Veasley* damages, punitive damages, and pre-judgment and post-judgment interested as determined by a jury [.]" *Id.* at p. 33.

EFI removed the action to this Court on January 9, 2026, alleging that diversity jurisdiction existed at the time of removal because Partridge, the only in-state defendant, was improperly joined. *See* [1] at p. 4.[6] It contends there is no possibility that the Blaines could recover from Partridge under any of the claims asserted against him. As noted above, ASIC consented to removal, and Mayeux has not yet been served with process.

On February 4, 2026, the Blaines filed their First Amended Complaint [16] as a matter of course. Disagreeing with removal of the case to this Court, they filed a Motion to Remand [17] on the same date alleging that EFI has failed to demonstrate that Partridge was improperly joined. *See* [17]. EFI opposes the Motion [17].

*Removal Standard*

"Under the federal removal statute, a civil action may be removed from state court to a federal court on the basis of diversity. This is so because the federal court has original subject matter jurisdiction over such cases." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (citing 28 U.S.C. § 1441(a)). Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a); *Addo v. Globe Life and*

---

[5] As to the other defendants, the Blaines assert the same claims against Mayeux as asserted against Partridge and the following additional claims against ASIC: failure to pay benefits, bad faith failure to pay/delay, breach of contract, tortious breach of contract, breach of covenant of good faith, respondeat superior, and estoppel.

[6] Again, the Blaines are citizens of Mississippi, and the parties do not dispute that the remaining defendants are out-of-state citizens.

*Accidents Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000). Diversity, as prescribed by Section 1332, requires that "all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F. 3d 1077, 1079 (5th Cir. 2008) (internal quotation marks omitted). "There is, however, a narrow exception to that rule for situations of improper joinder[.]" *Vaillancourt v. PNC Bank, Nat. Ass'n*, 771 F. 3d 843, 847 (5th Cir. 2014). Under the improper joinder doctrine, "a district court is prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been *improperly* or *collusively* joined to manufacture federal diversity jurisdiction." *Smallwood v. Illinois Cent. R. Co.*, 385 F. 3d 568, 572 (5th Cir. 2004) (citing 28 U.S.C. § 1359) (emphasis in original).

After a case is removed, a plaintiff may move for remand, and "[i]f it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The Fifth Circuit has held that the removal statutes are to be construed "strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941).

### Analysis and Discussion

In moving this Court to remand this action to state court, the Blaines contend that EFI "cannot show that Defendant Partridge was fraudulently joined." [18] at p. 18.[7] They do not dispute that the amount in controversy necessary to satisfy diversity jurisdiction is met. However, they

---

[7] The Court will refer to the term "fraudulent joinder" as "improper joinder," although the parties use the two interchangeably. *See Bourgeois v. U.S. Shipping Corp.*, 683 F. Supp. 3d 548, 553 n. 16 (E.D. La. 2023) ("While the Fifth Circuit uses the term 'fraudulent joinder' and 'improper joinder' interchangeably, the preferred term is 'improper joinder.'") (additional citations omitted).

6

contend that Partridge, a Mississippi citizen, is a properly joined defendant and therefore complete diversity is lacking and the case should be remanded.

In the Fifth Circuit, improper joinder may be established by showing "either that: (1) there was actual fraud in the pleading of jurisdictional facts; or (2) the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court." *Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 812 (5th Cir. 2021) (citing *Smallwood*, 385 F.3d at 573). Again, EFI, as the removing party, bears the burden of establishing improper joinder. *Id*. In its Notice of Removal [1], it does not allege that there was actual fraud in the pleading of jurisdictional facts; therefore, the Court will only consider whether it has shown that the Blaines "[are] unable to establish a cause of action" against Patridge—the only in-state defendant. *See id*.

"To show that a plaintiff cannot establish a cause of action against the non-diverse party in state court, a defendant must show 'that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.'" *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 473 (5th Cir. 2022) (quoting *Smallwood*, 385 F.3d at 573). "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573.

"Importantly, 'to determine whether a plaintiff has improperly joined a non-diverse defendant, the district court must examine the plaintiff's possibility of recovery against that defendant *at the time of removal*.'" *Acadia Ins. Co.*, 50 F.4th at 473 (quoting *Flagg v. Stryker Corp.*, 819 F.3d 132, 137 (5th Cir. 2016)) (emphasis in original). "In determining whether a claim

7

is stated, however, 'the court may consider allegations in post-removal filings which clarify or amplify the claims actually alleged in the complaint that was controlling when the case was removed.'" *Sinjel, LLC v. Ohio Cas. Ins. Co.*, 2022 WL 15523077, at *3 (S.D. Miss. Oct. 27, 2022) (quoting *Southern Waterworks Supply, Inc. v. Keller*, 2020 WL 8409100, at *3 (S.D. Miss. Apr. 16, 2020) (in turn quoting *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999)).

As an initial matter, the Court notes that, at the time of removal on January 9, 2026, the Blaines had not yet amended their original Complaint [2]. The First Amended Complaint [16] was filed on February 4, 2026 concurrently with the Blaines' Motion to Remand [17]. This amendment was filed as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). The Court has reviewed and compared the two pleadings and notes that no new claims are asserted against Partridge in the amended filing. It appears that the Blaines' First Amended Complaint [16] simply supplements and/or rephrases facts previously alleged in the original Complaint [2].

In briefing the Motion to Remand [17], both parties rely on and cite the facts set forth in the First Amended Complaint [16] rather than those in the original Complaint [2]. *See, e.g.*, [18] at p. 1; [32] at p. 2. The parties, as does the Court, therefore seem to view any additional language contained in the First Amended Complaint [16] as "clarify[ing] or amplify[ing] the claims actually alleged in the…" original Complaint [2]. *Sinjel*, 2022 WL 15523077 at *3. Thus, the Court will consider the facts alleged in the First Amended Complaint [16] in analyzing the improper joinder issue. *See LC Farms, Inc. v. McGuffee*, 2012 WL 5879433, at *2-4 (N.D. Miss. Nov. 21, 2012) (considering amended complaint in determining improper joinder issue where amendment was filed as a matter of course pursuant to Rule 15(a)).

8

Having addressed that observation, the Court now turns to the merits of the Motion [17]. The Court begins with a Rule 12(b)(6) analysis as to the Blaines' gross negligence claim against Partridge.

In Mississippi, "an insurance adjuster, agent or *other similar entity* may not be held independently liable for simple negligence in connection [to] its work on a claim. Such an entity may be held independently liable for its work on a claim if and only if its acts amount to any one of the following familiar types of conduct: gross negligence, malice, or reckless disregard for the rights of the insured." *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 784 (Miss. 2004) (emphasis added).

Relying on federal district court cases applying Mississippi law in their Memorandum [18], the Blaines argue that the First Amended Complaint [16] states a viable claim against Patridge based on this *Gallagher* standard. *See* [18] at p. 20-21. In responding to the Motion to Remand [17], the Defendants recognize the standard and agree that "to maintain a cognizable claim under Mississippi law against Partridge, his acts or omissions must rise to the level of gross negligence[.]" [32] at p. 16.[8] More specifically as to gross negligence, however, the Defendants argue that Mississippi law imposes on engineers no duty to insured homeowners when they are inspecting and subsequently preparing a report for an insurer and therefore the gross negligence claim fails. *Id.* at p. 21. In their Reply [36], the Blaines counter that argument by relying on

---

[8] The Defendants make this assertion in analyzing the Blaines' claim for bad faith adjusting against Partridge, which is listed as a separate claim from gross negligence in the First Amended Complaint [16]. *See id*. However, the Court notes that district courts in Mississippi have recently referred to claims raised under the *Gallagher* standard as gross negligence claims. *See Thomas v. Allstate Vehicle & Prop. Ins. Co.*, 2026 WL 49372, at *3-4 (S.D. Miss. Jan. 7, 2026); *see also Forest Tire & Auto, LLC v. Catlin Specialty Ins. Co.*, 2020 WL 5079164, at *4 (S.D. Miss. Aug. 27, 2020). Ultimately, it is unclear whether such a claim is subsumed in a bad faith adjusting claim and therefore the two are in reality one and the same. *See Allstate Ins. Co. v. Millsaps*, 296 So. 3d 163, 187 (Miss. Ct. App. 2020) (applying the same standard to a bad faith adjustment claim).

*Gallagher* as establishing a duty owed by Patridge for his work relative to their insurance claim. *See* [36] at p. 4.

Though neither party explicitly raises the issue, this Court has previously acknowledged that "[t]his standard of course raises the question of who qualifies as a 'similar entity.'" *Crosthwait Planting Co. v. Snipes*, 2018 WL 4471767, at *2 (N.D. Miss. Sept. 18, 2018) (involving a similar claim brought against an independent expert retained by an insurer to evaluate plaintiffs' insurance claims). In an attempt to reconcile the parties' arguments, the Court finds that an analysis of *Gallagher* is warranted.

In *Gallagher*, the plaintiff, Jeffcoat, sued an insurance adjuster, Gallagher Basset Services, Inc., for damages arising from Gallagher's adjusting work on his uninsured motorist claim. *Gallagher*, 887 So. 2d at 779. The case proceeded to trial, and the jury returned a verdict against Gallagher. *Id.* at 780. On appeal, the Mississippi Supreme Court clarified whether its decision in *Bass v. California Life Ins. Co.*, 581 So.2d 1087 (Miss.1991), created a separate standard of care for agents such as insurance adjusters. *Id.* at 785. In *Bass*, the Mississippi Supreme Court abrogated its prior ruling that an adjuster does not owe an insured a fiduciary duty nor a duty to act in good faith. *Bass*, 581 So.2d at 1090. Instead, it adopted a broader standard providing that "an adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim." *Id.* (quoting *Dunn v. State Farm Fire & Casualty Co.*, 711 F. Supp. 1359, 1361 (N.D.Miss.1987)). The *Bass* court also held that an adjuster is not liable for simple negligence but provided an exception for incurrence of liability when an adjuster engages in conduct constituting "gross negligence, malice, or reckless disregard for the rights of the insured." *Id*. *Gallagher* reiterated and adopted that holding. *See Gallagher*, 887 So. 2d at 784.

10

Reverting to this case, it is undisputed that Partridge is not an insurance adjuster but a third-party engineer employed by an engineering firm (EFI) that was retained by the insurer (ASIC) to prepare a damage report. *See* [16] at p. 14. In short, is unclear whether Mississippi law imposes a duty upon Partridge, individually, and whether he, as a third-party engineer, should be considered a "similar entity" under the *Gallagher* standard. The Court has found no Mississippi state court case providing for individual liability of an engineer in this context "[n]or a clear definition of who, other than insurance agents and claims adjusters, is encompassed within this standard." *Chapman v. Coca-Cola Bottling Co.*, 2011 WL 13192698, at \*7 (S.D. Miss. Aug. 31, 2011); *see also Forest Tire & Auto, LLC v. Catlin Specialty Ins. Co.*, 2020 WL 5079164, at \*4 (S.D. Miss. Aug. 27, 2020) (acknowledging that no Mississippi state court has concluded that an engineer is a "similar entity" under *Gallagher* in ruling on competing motions to dismiss.).

At the same time, *Bass*, and by extension *Gallagher*, *could* be read to extend liability to parties involved in investigating or evaluating an insurance claim. In fact, the District Court for the Southern District of Mississippi has pointed out that "[t]he Fifth Circuit has [previously] applied the standard from *Gallagher* to professionals with whom the insurance company has a paid or contractual relationship." *Chapman*, 2011 WL 13192698 at \*7. For example, in *Aiken*, a case factually similar to the case at bar, the Fifth Circuit held that "an outside engineer" hired to assess damage caused by a natural disaster qualified as a "similar entity" under the *Gallagher* standard. *Aiken v. Rimkus Consulting Grp. Inc.*, 333 F. App'x 806, 810 (5th Cir. 2009). However, the Court finds it noteworthy that the Fifth Circuit cited no Mississippi authority in support of its

interpretation.[9] Additionally, *Aiken* did not involve a jurisdictional issue and was appealed after the district court granted a motion for judgment as a matter of law at trial. *See id.* at 808.

Critical to the outcome of the Blaines' Motion to Remand [17] is the current procedural posture of this case. Notably, in deciding an improper joinder issue, "all ambiguities in the controlling state law are resolved in favor of the non-removing party." *Crosthwait*, 2018 WL 4471767 at *2 (quoting *Int'l Energy Ventures Mgmt.*, 818 F.3d at 204) (internal quotation marks omitted); *see also Wheeler v. UMB Bank, N.A.*, 664 B.R. 121, 133 (N.D. Miss. 2024) (quoting *Fairley v. ESPN, Inc.*, 879 F. Supp. 2d 552, 556 (S.D. Miss. 2012) ("[A] federal district court is precluded… from applying an *Erie* analysis in determining a fraudulent joinder issue because ambiguities of state law… must be resolved in the plaintiff's favor."). Therefore, unlike some Mississippi federal courts which have relied on *Aiken* in issuing substantive rulings, a different result is warranted here in light of this Court's opinion that there exists ambiguity in Mississippi law relative to this claim. Again, the Court finds it unclear whether Mississippi law imposes upon Partridge, as a third-party engineer, a duty to the Blaines in preparation of his damage report, which was submitted to their insurer, and whether he may be held individually liable under *Gallagher*. *See Mooney v. Shelter Mut. Ins. Co.*, 2018 WL 9963837, at *2 (S.D. Miss. Mar. 12, 2018) (noting "an uncertainty of law" with respect to plaintiff's bad faith adjusting claim against an engineering firm as partial reason for remanding the case); *Chapman*, 2011 WL 13192698 at *7 (discussing ambiguity of standard under *Gallagher* and *Bass* in analyzing claim against physician's clinic and granting remand); *Crosthwait*, 2018 WL 4471767 at *2 (same).[10]

---

[9] The Court also notes that *Aiken* is unpublished (and therefore has no precedential value), and this Court must nonetheless analyze the instant issue by applying the "controlling state law[.]" *See Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003).

[10] As noted above, *Crosthwait* involved a similar claim under *Gallagher* against an independent expert retained by an insurer to evaluate plaintiffs' insurance claims. There, this Court granted remand partially due to the ambiguity in state law surrounding this standard.

Considering the current procedural posture of this case, the Court finds that this ambiguity favors remand. *See KSN Hosp. LLC v. Great Lakes Ins. SE*, 640 F. Supp. 3d 725, 730 (S.D. Tex. 2022) (quoting *D&J Invs. of Cenla, LLC v. Baker Hughes a GE Co.*, 52 F.4th 187, 195 (5th Cir. 2022)) ("When controlling state law is too uncertain to support improper joinder, remand to state court is required.") (internal quotation marks omitted).[11] The Court simply cannot definitively conclude that there is no possibility of recovery against Partridge. Thus, EFI has not met its burden of establishing that Partridge was improperly joined as a defendant in this case, and this Court is without jurisdiction to preside over this case.[12]

*Conclusion*

For the reasons set forth above, the Blaines' Motion to Remand [17] is GRANTED. It is hereby ORDERED that this cause be REMANDED to the Circuit Court of Tate County, Mississippi for further proceedings. The Clerk of Court shall take all steps necessary to accomplish this remand. This CASE is CLOSED.[13]

SO ORDERED, this the 27th day of May, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[11] Additionally, the Court notes that, because "the removal statute is strictly construed in favor of remand, any doubt about the propriety of removal must be resolved in favor of remand." *Id.* (internal quotation marks and citations omitted).

[12] Having resolved the ambiguity as to the gross negligence claim in the Blaines' favor, the Court need not analyze the remainder of their state law claims against Partridge. *See Wheeler v. UMB Bank, N.A.*, 664 B.R. 121, 133 (N.D. Miss. 2024). Also, in light of the Court's decision to remand this case, it does not reach the Motion to Dismiss [11] and Renewed Motion to Dismiss [27].

[13] In reaching its conclusion, the Court, as noted previously, has considered the allegations contained in the First Amended Complaint [16]. Nevertheless, the Court notes that the allegations as to Partridge's status as a third-party engineer were also contained in the original Complaint [2]. Thus, if the Court had instead considered the allegations in the original Complaint [2], the outcome would remain unchanged.